IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIE MURPHY,
      Plaintiff,

vs.                             Case No.: 3:12cv386/LAC/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]
      Defendant.
_____/

## ORDER and REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.* It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.      PROCEDURAL HISTORY

      On November 7, 2007, Plaintiff filed an application for DIB and alleged therein disability beginning June 21, 2007 (tr. 17).[2] Plaintiff's application was denied initially and on reconsideration,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Michael J. Astrue as the Defendant in this case.

[2] All references to "tr." refer to the transcript of Social Security Administration record filed on November 9, 2012 (doc. 11). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

and thereafter he requested a hearing before an administrative law judge ("ALJ") (tr. 17). A hearing was held on December 18, 2009, at which Plaintiff was represented by counsel, and on March 12, 2010, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (tr. 17–34). On March 9, 2012, the Appeals Council denied Plaintiff's request for review (tr. 1). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed, in which Plaintiff proceeds pro se and in forma pauperis.[3]

## II.    FINDINGS OF THE ALJ

In her written decision, the ALJ made several findings relative to the issues raised in this appeal (tr. 17–34):

1)    Plaintiff met the insured status requirements of the Act on his alleged disability onset date, and he continues to meet the requirements through at least December 31, 2011.[4]

2)    No persuasive evidence exists to establish that Plaintiff has engaged in substantial gainful activity since June 21, 2007, the alleged onset date.

3)    Plaintiff has the following severe impairments: multilevel spondylosis; bilateral pes planus; lumbalgia; chronic plantar fasciitis with minimal spurring of the feet; and pain disorder, chronic.

4)    Plaintiff has no impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5)    Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) (that is, "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," as well as "sitting . . . [and occasionally] walking and standing"), but he can never lift or carry more than fifteen pounds; he can sit eight hours, total, in an eight-hour workday; and he can stand and walk a total of two hours in a workday, although he is limited to standing/walking no more than fifteen minutes at a time per hour.

6)    Plaintiff is unable to perform any of his past relevant work.

---

[3] In light of Plaintiff's pro se status, the court will—as it must—construe his pleadings liberally and hold them to a less stringent standard than pleadings drafted by attorneys. See Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citation omitted).

[4] Thus, the time frame most relevant to this appeal is June 21, 2007 (alleged onset) to March 12, 2010 (date of the ALJ's opinion), even though Plaintiff is insured through 2011 for DIB purposes.

7)      Plaintiff was born on February 9, 1966, and was forty-one years of age on the date he alleges he became disabled, and thus he is considered a "younger individual" (*see* 20 C.F.R. § 404.1563(c) (defining a younger individual as one under the age of 50 and noting that such age generally will not seriously affect the person's ability to adjust to other work)).

8)      Plaintiff has at least a high school education and is able to communicate in English.

9)      Considering his vocational background and RFC, Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

10)     Plaintiff has not been under a disability, as defined in the Act, at any time from June 21, 2007, and continuing through March 12, 2010, the date of the ALJ's decision.

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the

Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

        A.      Personal History

        Plaintiff attended two years of college and has past relevant work as a store manager and parts manager, which jobs required lifting or stocking items that weighed up to 100 pounds (tr. 46–48, 61, 146).[5]  Plaintiff, who last worked in 2007, generally alleges disability due to back, leg and foot pain (tr. 47, 49–50).  At his hearing before the ALJ, Plaintiff testified he can walk fifteen minutes, stand or sit ten to fifteen minutes, and lift ten to fifteen pounds (tr. 52–53).  He also stated he can climb eight to ten stairs and stoop and squat if he holds on to something (tr. 54).  With regard to daily activities, Plaintiff testified that he drives three to four times a week, mostly to the library; attends ministry once a week; and generally spends his days watching television and reading (tr. 55).  He can prepare simple meals, bathe and dress himself, wash dishes, do the laundry, and make beds (tr. 54–55; *see also* tr. 176).

        B.      Relevant Medical History

        Before briefly outlining Plaintiff's medical history the court addresses the manner in which Plaintiff responded in his memorandum (doc. 18) to the court's Scheduling Order, issued November 13, 2012 (doc. 12).  Initially, the court recognized Plaintiff's pro se status in the Scheduling Order and advised him that it must construe his pro se filings liberally and hold them to a less stringent standard than those drafted by attorneys, but the court also cautioned Plaintiff that it was not required to rewrite deficient pro se filings and that pro se litigants are required to follow all procedural rules (*id.* (citing <u>Hughes</u>, 350 F.3d at 1160; <u>GJR Invs., Inc. v. County of Escambia</u>, 132 F.3d 1359, 1369 (11th Cir. 1998)).  The court also directed Plaintiff, indeed instructed him emphatically, that his memorandum in support of the complaint must "<u>set forth his legal contentions and specifically cite the record by page number for factual contentions</u>" (*id.* at 2, emphasis in original).  Plaintiff was clearly warned that the failure "<u>to support factual contentions with accurate, precise citations to the record would result in the contention(s) being disregarded for lack of proper</u>

---

        [5] Gail Jarrell, a vocational expert ("VE"), testified at Plaintiff's hearing.  She characterized Plaintiff's past managerial work as "skilled" and noted it was performed at medium to heavy levels of exertion (tr. 61).  She also testified that Plaintiff's past work involved the use of a computer, which is a skill that would likely transfer to the sedentary level of exertion (tr. 61–62).

development" (*id.*, emphasis in original). Despite the court's clear instructions that in his memorandum he must cite the record by page number for factual contentions, Plaintiff failed to do so. The memorandum contains not a single page citation to the administrative record, other than to portions of the ALJ's opinion and to one page of the transcript of the VE's testimony (*see* doc. 18). As Plaintiff's memorandum therefore is not in compliance with the court's instructions, the court could disregard his factual contentions for lack of proper development. Such an approach would not be unreasonable, especially given the clarity of the court's instructions to Plaintiff in the Scheduling Order and wasteful expenditure of limited court resources needed to attempt to remedy the difficulties caused by Plaintiff's noncompliance. In consideration of Plaintiff's pro se status, however, the court shall not proceed so harshly. Rather, in an effort not to unduly prejudice the pro se Plaintiff (despite his failure to follow the court's instructions), while at the same time conserve the court's resources, the court will conduct a summary review of the record that is largely based on the facts and evidence set forth in the ALJ's decision (*see* tr. 19–31) while organized around the impairments Plaintiff identifies and briefly discusses in his memorandum. The review shall also note any relevant evidence that the court has identified and, where relevant and properly referenced, the evidence discussed in the Commissioner's memorandum (doc. 21). With the foregoing preface, the court proceeds with its abbreviated outline of Plaintiff's relevant medical history.

(1)     Treating Sources

Plaintiff was treated by several podiatrists during the time frame relevant to this appeal for a variety of ailments, including bilateral plantar fasciitis, a calcaneal/heel spur of the left foot, bursitis, bilateral pes planus ("flat feet"), bilateral tibial stress reaction ("shin splints"), and bilateral posterior tibialis tendonitis (tr. 19–20). One of the podiatrists, Scott A. Doherty, D.P.M., advised Plaintiff to wear arch supports with outdoor footwear and cork sandals when indoors, but in September 2007 Dr. Doherty noted that Plaintiff was non-compliant with his advice (tr. 296, 281; *see also* tr. 372, reflecting Plaintiff's failure to "regularly" use an electrical stimulation device for pain that had been provided to him by a treating source). Another, Nat Rickoff, D.P.M., limited Plaintiff to standing no more than fifteen minutes in one hour, "with sitting for the remainder of an

eight-hour day" (tr. 488–89).[6]  And a third, Matthew Etheridge, D.P.M., conducted an examination in September 2008 and noted that Plaintiff had no gross deformities in his feet or ankles, full range of motion ("ROM") in all foot joints, and full muscle strength, bilaterally, in all areas tested, although pain on palpation was noted at several areas of the feet (tr. 367).  Dr. Etheridge also noted that "strapping" the feet had been "very successful in alleviating" Plaintiff's symptoms (tr. 239).

Plaintiff was also treated by two orthopedists during the relevant period.  In May 2007, Plaintiff was examined by Alec C. Kessler, M.D., who noted heel tenderness, "mild" paraspinal muscle tenderness, and a "mild" spasm in the lumbar spine (tr. 227).  He also noted some decreased motion in forward spinal flexion and extension, but a negative straight leg raising test and full ROM in the hips, knees, and ankles (*id.*).  Additionally, although he observed Plaintiff's flat feet, he also commented that the feet had "good flexibility" (*id.*).  X-rays of the feet were negative for fracture or degenerative changes, although a prior Achilles tendon repair was evident on the left side[7] (*id.*; *see also* tr. 246, reflecting a normal arterial study of Plaintiff's lower extremities).  X-rays of the lumbar spine showed "fairly well maintained disc spaces" with "a bit" of straightening of the spine but no significant degenerative changes (tr. 227–28).  Ultimately, Dr. Kessler diagnosed back pain, bilateral heel pain, and flat feet (tr. 228).  In August 2007, Dr. Kessler again examined Plaintiff and noted some tenderness to palpation at the shins and heels, but the arches were intact, Plaintiff had full ROM in the knees, and he was "[s]table to varus, valgus stressing, Lachman's, [and] posterior drawer" testing (tr. 224).  Dr. Kessler limited Plaintiff to standing no more than fifteen minutes in one hour and carrying no more than fifteen pounds and stated Plaintiff that "can return to work with primarily sedentary work" (tr. 224, 233).  Dr. Kessler also recommended physical therapy, massage therapy, and the use of orthotics and hot packs, among other conservative modalities (*see* tr. 224–25).  Plaintiff saw a second orthopedist, Phillip Benton, M.D., in October 2007 for evaluation of bilateral plantar fasciitis and foot and leg tendonitis, as well as a heel spur on the left foot (tr. 314).  Plaintiff reported pain in the feet, knees, and legs, for which Dr. Benton prescribed Mobic,

---

[6] Dr. Rickoff's opinion, which was rendered on April 3, 2008, appears to concern only a six-week period (that is, that Plaintiff is restricted from standing more than fifteen minutes only through (approximately) mid-May 2008) (*see* tr. 489).  It should be noted, however, that regardless of whether Dr. Rickoff intended that the restriction "expire," it was included in Plaintiff's RFC.

[7] In January 2002, Plaintiff ruptured his Achilles tendon while playing basketball (tr. 480).  Douglas Tappan, M.D., surgically repaired the tendon (tr. 481–82), and Plaintiff did well following surgery and returned to work (tr. 479).

a nonsteroidal anti-inflammatory medication (*id.*). Plaintiff returned in November 2007, and Dr. Benton treated Plaintiff's feet with ultrasound therapy, orthotics, and forefoot strapping (tr. 313; *see also* tr. 237, a previous report by Plaintiff that strapping reduced his pain by 10%). Plaintiff returned in early December 2007 and additionally reported back pain, which prompted Dr. Benton to refer him for x-rays of the lumbar spine (tr. 312). The x-rays, obtained on December 19, 2007, revealed normal spinal alignment, no fracture or subluxation, and only "very minimal degenerative disc change" in the upper lumbar spine (tr. 321).

Commencing in November of 2006 (*see* tr. 250), Plaintiff received ongoing care from Lisa King, M.D., a family practitioner, for a variety of ailments, including swelling in the legs and pain in the heels, legs, ankles, and low back (*see also* tr. 23). In May 2007, Dr. King referred Plaintiff to Orthopedist Kessler for an evaluation (the results of which are summarized above). In June 2007, Dr. King prescribed Ultram for pain, and in July 2007 she reviewed Dr. Kessler's records and commented that there were "no findings on ortho[pedic] eval[uation] to suggest spinal or rheumatoid etiology of symptoms" (tr. 245, 243). In September and October 2007, Dr. King observed that Plaintiff had a normal gait (tr. 498, 496). On an undated form, but which appears to have been completed by Dr. King between March and October 2007 (*see* tr. 496), she found Plaintiff capable of performing sedentary work (defined on the form as involving sitting "most of the time" but possibly involving "walking or standing for brief periods of time") (tr. 495). She also checked boxes on the form indicating that Plaintiff can work six hours in a workday, five days per week, but cannot drive for prolonged periods or lift, push, or pull more than fifteen pounds (*id.*). On July 9, 2007, Dr. King wrote a brief note on a document titled "Permission to Return to Work or School" and indicated that Plaintiff should refrain from standing more than one hour at a time (tr. 497). On September 6, 2007, and October 31, 2007, Dr. King examined Plaintiff and noted, in pertinent part, that his gait and neurological examinations were normal (tr. 498, 496). Following the September examination, Dr. King "cleared" Plaintiff for work and indicated he could work "now," although she apparently restricted him (only) from prolonged standing or walking (*see* tr. 498). Following the October examination, she restricted Plaintiff (only) from prolonged standing or walking, but she also opined—by checking a box—that she could not release Plaintiff to work (*see* tr. 496). In September 2008, Dr. King noted that an inspection of Plaintiff's back was normal and that his gait was "steady"

(tr. 373; *see also* tr. 372, noting same in December 2008). She advised Plaintiff to diet but imposed no restrictions (tr. 373).

Finally, Plaintiff received treatment from various physicians with the Veterans Administration ("VA") for his back and feet, including Joseph W. MacDonald, M.D.; Clay L. Mosltad, M.D.; William J. Mitchell, M.D.; Clint McCready, M.D.; Jonathan E. Fountain, M.D.; and Joe Jackson, M.D.. He also saw a physical therapist ("PT") with the VA, Rommell C. Orcino, as well as physicians' assistants ("PAs"), Lourdes Labrillazo and Mamie Wu. While the VA records need not be fully summarized here, because the ALJ has done so in her decision, the following is a general overview of the pertinent records.

VA Records from 2007

In January 2007, Dr. MacDonald evaluated Plaintiff's bilateral plantar fasciitis and flat feet (tr. 264–66). Plaintiff described his average pain as a four to five on a ten-point scale ("4-5/10") and stated he could stand about four hours and walk about four hours without much discomfort (tr. 265; *see also* tr. 271, 414, 429, reflecting reports by Plaintiff that 4/10, 6/10, and 8/10 are "tolerable level[s] of pain"). X-rays of the feet revealed degenerative changes (tr. 266, 306), but Dr. MacDonald observed that Plaintiff was "fully ambulatory" and had a normal gait (tr. 265). In late March 2007, Plaintiff complained of bilateral heel pain but reported that the pain was relieved by walking (tr. 296; *see also* tr. 280, another report by Plaintiff, in September 2007, that his heel pain was relieved by walking). In July and October 2007, Dr. Mosltad noted that Plaintiff had a normal gait, minimal heel tenderness, good pulses, and intact sensation (tr. 284). Plaintiff advised Dr. Mosltad that his pain was at a 4/10, and Dr. Mosltad continued the Mobic (tr. 284–85). In November 2007, Dr. Mitchell saw Plaintiff and found a stable gait, no edema, and normal muscle strength, deep tendon reflexes, coordination, and balance (tr. 268, 270). Dr. Mitchell recommended that Plaintiff increase his bicycling to sixty minutes a day, five times a week, to lose weight (tr. 268).

VA Records from 2008

In January 2008, Plaintiff rated his low back pain at a 3/10 (tr. 344–45). And in March 2008, Dr. Mitchell again recommended that Plaintiff ride a stationary bicycle to lose weight, after noting that Plaintiff had not been riding a bicycle as previously advised (tr. 340). Additionally, Plaintiff indicated he would "restart going to the gym" (*id.*).

On June 4, 2008, PA Labrillazo conducted a thorough physical examination of Plaintiff, the results of which were approved by a supervising physician (whose signature is not fully legible, *see* tr. 472) (tr. 464–72). Prior to the examination PA Labrillazo reviewed podiatry records, VA records, and Dr. Benton's records, among other miscellaneous records and reports of diagnostic testing (*see* tr. 464–69), and she interviewed Plaintiff. In pertinent part, Plaintiff advised PA Labrillazo that he was a full-time bible college student, his hobbies included fishing, and he was independent in his activities of daily living, including driving (tr. 466). He also reported that on a typical day he used the computer, took care of family issues, studied, and went to the gym, and that in a typical week he rode a bicycle four times, for approximately one hour each time (*id.*). Plaintiff reported joint tightness and pain in his feet and rated the pain at a 3/10, as he did with regard to pain he reported in the right knee and low back (tr. 468–69). A physical examination revealed that Plaintiff ambulated "unassisted without [a] cane, brace[s], or crutches"; his posture was erect; and he had a normal gait (tr. 469). The "musculoskeletal/neurological" portion of the examination revealed: (1) normal muscle strength, bilaterally, in all areas tested, and no muscle spasm; (2) no difficulty with heel walking, toe walking, heel-toe walking, or performing shallow knee bends; (3) negative straight leg raising tests, bilaterally, and no objective findings of radiculopathy or polyneuropathy; (4) equal and symmetrical sensation to pinprick, intact "vibratory sense" in all areas tested (including, presumably, the spine), and no sacroiliac tenderness; and (5) normal deep tendon reflexes (tr. 470). PA Labrillzao also found no redness, warmth, edema, or deformity on repetitive active ROM testing of Plaintiff's thoracolumbar spine, hips, knees, ankles, and feet, although Plaintiff displayed some limits in ROM and/or pain with ROM testing at some areas (tr. 470–71). After noting that all x-rays were normal or essentially normal (with the exception of foot x-rays), PA Labrillazo diagnosed bilateral pes planus with plantar fasciitis, status post left Achilles tendon repair with residuals, and minimal degenerative disc disease of the lumbar spine without objective findings of radiculopathy (tr. 472).

In July 2008, Dr. Mitchell advised Plaintiff to engage in "a moderate level of persistently performed exercise 30 minutes per day at least 5 days a week" (tr. 446). An August 2008 MRI of Plaintiff's right foot revealed minimal spurring at the right first metatarsal joint and a degenerative subchondral cyst in the right great toe of (likely) doubtful clinical significance (tr. 364, 450). A MRI of the left foot was unremarkable (tr. 365). And a lumbar spine MRI revealed multilevel spondylosis, disc protrusion and endplate hypertrophy at L4-5, and generous canal and recesses with

no evidence of nerve root involvement (tr. 366, 429, 474; *see also* tr. 452, describing the lumbar MRI as revealing: "Lumbar vertebrae height, alignment and intervertebral spaces are maintained. No displaced fractures. No abnormal motion with lumbar flexion and extensions. Impression: Normal lumbar spine."). Plaintiff requested a referral to an orthopedist but was advised that the objective tests revealed no need for an orthopedic consult (tr. 429). In October 2008, PT Orcino found no evidence of radiculopathy and opined that Plaintiff could ambulate an "unlimited distance" (tr. 416). He also reported that Plaintiff had normal ROM in his arms and legs, and he provided Plaintiff with a home exercise program (*id.*). On the same day, Dr. McCready observed that although Plaintiff had some tenderness to palpation over L1, he could walk more than 300 feet without antalgia, his straight leg raising tests were negative, and he was reportedly independent in his activities of daily living (tr. 418–19). Notably, Plaintiff asked whether the VA would pay his gym fees (tr. 419).

    <u>VA Records from 2009</u>

    Subsequent VA visits through February 2, 2009, show that Plaintiff continued to rate his pain at or about a 4/10 (tr. 407, 410, 420, 428, 433, 440, 443). Additionally, in January and February 2009, Dr. Fountain noted that Plaintiff had normal ROM in his legs and ankles, no active inflammation or swelling, no ankle crepitus, and negative straight leg raising tests (tr. 407, 411). In February 2009, Dr. Jackson, a neurologist, evaluated Plaintiff for his foot pain and low back pain, which—Plaintiff reported—no longer radiated into his legs (tr. 501). Dr. Jackson stated that Plaintiff had a limited ROM (presumably in his back) due to guarding, but no spasm to explain the reduced ROM (tr. 504). Dr. Jackson also noted that Plaintiff's motor skills, sensation, coordination, and gait were all intact, and he observed that Plaintiff could heel and toe walk without difficulty (tr. 504–05). Dr. Jackson diagnosed myofascial versus somatoform back pain with no evidence of root involvement (tr. 505). The following month, March 2009, Plaintiff told PA Wu that he drove and had no impediments in his activities of daily living (tr. 564). She observed a normal gait, no atrophy, full muscle strength, and normal sensation (tr. 565–66). PA Wu also found no functional limitations with regard to standing and walking, and no evidence of abnormal weight-bearing (tr. 566). She diagnosed bilateral tibial stress reaction (shin splints) and bilateral posterior tibial tendonitis (tr. 566–57). In June 2009, Plaintiff advised a VA psychologist that he "stayed busy" with

religious volunteer work at a prison (tr. 515, 518).  And in September 2009, Plaintiff reported that he enjoyed playing sports, fishing, going to the movies, and volunteering with the prison ministry (*see* tr. 551).

(2)  Non-Treating Sources

In April 2008, John A. Dawson, M.D., a non-examining agency physician, opined that Plaintiff can lift twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in a workday (tr. 355–62).

In February 2009, David W. Fisher, M.D., examined Plaintiff and noted a full active ROM in his upper and lower extremities, but tenderness to palpation above the medial calcaneal tuberosity, as well as proximal plantar fascia (tr. 492).  Dr. Fisher also noted that Plaintiff had flat feet and a well-healed Achilles tendon repair (*id.*).  Plaintiff displayed tenderness in his heels and trace edema, but he walked with a normal gait and was able to heel, toe, and tandem walk normally (tr. 492, 505). Dr. Fisher found a reduced active ROM in Plaintiff's back, with muscle spasm (tr. 492). Additionally, although Plaintiff had reduced sensation in his right foot and an absent left Achilles tendon reflex, he had full muscle strength in his legs (*id.*).  Dr. Fisher opined that Plaintiff cannot perform sedentary work, because his (Dr. Fisher's) understanding of the exertional requirements of sedentary work, including "standing and walking for a total of 2 hours in an 8 hour workday" (tr. 493).  In light of the exertional requirements, as understood by Dr. Fisher, he opined that Plaintiff's "bilateral heel pain precludes him from sedentary work" (*id.*).

V.  DISCUSSION

Plaintiff's primary contention in this appeal appears to concern the ALJ's consideration of the VA records because—says Plaintiff—the evidence from the VA is "under appeal" or "under appeal as of 2007" (*see, e.g.*, doc. 18 at 1, 7; *see also* tr. 12, Plaintiff's request for review by the Appeals Council).[8]  However, liberally construing Plaintiff's filings—which include the complaint

---

[8] While Plaintiff has not clearly set forth his arguments, he appears to contend that the ALJ erred in considering the results of the examination conducted by PA Labarillazo, and presumably an earlier examination conducted by PA Wu, which examinations he refers to as Compensation and Pension ("C&P") examinations (*see* doc. 18).  As discussed further *infra*, these examinations led to determinations by the VA regarding which of Plaintiff's impairments are "service connected" and the extent to which any service-connected impairment results in disability for VA purposes.

and amended memorandum in support thereof (docs. 1, 18[9])—as the court must, the court will consider four broad claims for relief that arguably have been raised by Plaintiff.  More specifically, the court will consider whether the ALJ erred in: (1) failing to find that Plaintiff's musculoskeletal impairments meet or equal a listed impairment; (2) rejecting the opinions of Dr. King and Dr. Fisher and assigning greater weight to the opinions and records of VA physicians/staff; (3) rejecting Plaintiff's subjective complaints of pain and other symptoms; and (4) determining Plaintiff's RFC.

A.      Step Three Findings

At the third step of the sequential evaluation, the ALJ must determine whether a claimant has an impairment that meets or medically equals a listed impairment.  If an impairment meets or equals one of the listed impairments, as well as the twelve-month duration requirement, it is presumptively disabling, and no further inquiry is required.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).  The burden at this step, though, is on the claimant.  And to meet this burden a claimant must submit evidence proving that he meets or equals all of the specified criteria of the applicable listing and the duration requirement.  *See* Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986) ("when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment"; alternatively, if a claimant "contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency"); Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (same).

Here, the ALJ considered Plaintiff's musculoskeletal impairments under Listing 1.02, which outlines the following criteria for an impairment to meet the listing.  First, a claimant must have a "major dysfunction of a joint," which—the ALJ found—Plaintiff has.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02.  A claimant must also have, however, either:  (A) "Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate

---

[9] The court has also reviewed document 17, the first memorandum filed by Plaintiff in support of his complaint, and notes it is virtually identical to the amended memorandum.  The only apparent differences are that Plaintiff numbered the paragraphs in the amended memorandum and omitted a hand-written cover page that was submitted with the original memorandum (*compare* doc. 17 *with* doc. 18).  Substantively, however, the memoranda are the same.

effectively, as defined in 1.00B2b"; or (B) "Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in [specified] inabilit[ies] . . . ." *Id.*, §§1.02A, B (emphasis added).   Here, as was appropriate based on the nature of Plaintiff's musculoskeletal impairments, the ALJ considered whether the impairments meet the subsection A requirements of Listing 1.02, and the ALJ concluded that they do not.   The ALJ did not err in so concluding.

An "inability to ambulate effectively," for purposes of Listing 1.02A, means:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

§ 1.00B2b(1) (internal reference omitted).

Additionally, to "ambulate effectively," individuals must:

> be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail . . . .

§ 1.00B2b(2).

The ALJ found that Plaintiff's impairments do not meet the criteria of Listing 1.02A because, even though Plaintiff may be restricted from "prolonged ambulation," there is no evidence establishing or even suggesting that he cannot ambulate independently without the use of an assistive device, much less a device that limits the functioning of both upper extremities (*see* tr. 21). The record clearly supports this finding.  As noted above, Plaintiff goes to the gym, rides a bike, has a normal gait, and can heel, toe and tandem walk.  Further, Plaintiff specifically reported that "he can walk with no assistive device" (tr. 179), and PA Labrillazo (among others) observed him doing so. In short, the record clearly establishes that Plaintiff ambulates without an assistive device.  Thus, the ALJ's findings at step three—that Plaintiff can ambulate without the use of an assistive device

and is otherwise able to independently ambulate, and therefore his impairments do not meet or equal the criteria of Listing 1.02—are supported by substantial evidence on the record as a whole. To be sure, Plaintiff has pointed to no evidence, such as medical records or even his own testimony, that undermines these findings. Accordingly, Plaintiff is not entitled to relief on this claim.

> B.    The Opinions of Dr. King, Dr. Fisher, and VA Treating Sources (including the results of C&P examinations conducted by VA staff)

Plaintiff contends the ALJ erred in discounting the opinions of Dr. King, a treating physician, including her opinion that he can work only six hours per day, five days per week (Plaintiff also notes, correctly, that VE Jarrell testified that a person who cannot work more than six hours per day is unemployable, and he argues that had the ALJ accepted Dr. King's opinion he would be deemed disabled based on the VE's testimony) (*see* doc. 18 at 5; *see also* tr. 65).[10] Plaintiff further contends the ALJ erred in rejecting the opinion of Dr. Fisher, a one-time examining physician, that Plaintiff is precluded from performing sedentary work. And, as previously noted, Plaintiff appears to contest the results of C&P examinations conducted by VA staff and/or the ALJ's consideration of the results of those examinations (*see* doc. 18).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). Thus, an ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. But, if an ALJ elects "to disregard the opinion of a treating physician, the ALJ must clearly articulate [his] reasons"

---

[10] Plaintiff also claims that Dr. King opined in January 2008 that he could work no more than four hours per day (doc. 18 at 4, 5), but Plaintiff has not identified where in the lengthy record this opinion appears, and the undersigned has been unable to locate it. To the extent Dr. King rendered such an opinion it does not affect the ALJ's findings or the undersigned's analysis of this claim (e.g., if Plaintiff is precluded from work because he cannot work more than six hours per day, he is precluded from work if he cannot work more than four hours per day).

for doing so. *Id.* at 1241; *see also* <u>Edwards</u>, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). However, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

Where substantial record evidence supports the ALJ's decision to discount a treating physician's opinion, the opinion of an examining physician itself becomes entitled to significant weight. *See* <u>Richardson v. Perales</u>, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (report of consultative examiner may constitute substantial evidence supportive of a finding adverse to a claimant); 20 C.F.R. § 404.1527 (every medical opinion should be evaluated, and unless a treating source's opinion is given controlling weight, the following factors are considered in deciding the weight to be given to any medical opinion: examining versus non-examining; treatment relationship, including length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship; supportability of the opinion(s); consistency with the record as a whole; specialization; and "other factors").

Here, in rejecting Dr. King's opinions regarding Plaintiff's capacities, the ALJ noted that her clinical findings do not support such severe restrictions (tr. 31). The record supports the ALJ's rationale, regardless of whether Dr. King opined that Plaintiff is limited to only four hours of work per day or six hours (*see* footnote 10, *supra*). For example, Dr. King consistently observed a normal gait and noted that Plaintiff's neurological examinations were normal. Additionally, she was aware of Plaintiff's x-rays (*see, e.g.*, tr. 496), which revealed no evidence of fracture or degenerative changes (tr. 227). Indeed, she specifically reviewed and noted the results of Dr. Kessler's largely unremarkable examination and the normal x-rays he obtained. She also noted, in September 2007, that studies of Plaintiff's lower extremities were normal (tr. 498). Additionally, she referred Plaintiff for Doppler studies, which resulted in a finding of "NO rest or stress induced arterial insufficiency" (tr. 222, emphasis in original). In further discounting Dr. King's opinions, the ALJ found that the restrictions she imposed varied, which finding is supported by the record. For example, Dr. King's clinical notes and examination results from September and October of 2007 are essentially the same

yet, as previously noted, following the September visit she cleared Plaintiff for work and following the October visit she declined (without explanation) to do so. Continuing, the ALJ noted that Dr. King's opinions are inconsistent with those of Dr. Rickoff, Dr. Etheridge, and other podiatrists who treated Plaintiff (none of whom restricted him from work or imposed restrictions, temporary or otherwise, that are inconsistent with the RFC). And finally, the ALJ noted that Dr. King is not a specialist. Based on the foregoing, it is clear that the ALJ did not err in rejecting the disabling limitations assessed by Dr. King. The ALJ articulated her reasons for rejecting those opinions, and the reasons she stated are supported by substantial evidence.

Likewise, the ALJ did not err in assigning only "moderate" weight to the opinions of Dr. Fisher, a non-treating source who examined Plaintiff on only one occasion (tr. 31).[11] As the ALJ noted, Dr. Fisher rendered his opinion—that Plaintiff cannot perform sedentary work—based upon his understanding of the meaning of the term "sedentary work" and his belief that such work necessarily requires physical capacities beyond Plaintiff's abilities (tr. 26). Such opinions, however, concern issues that are reserved solely for the Commissioner, and the Commissioner "will not give any special significance to the source" of such opinions. 20 C.F.R. § 404.1527(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating (or examining) source opinions on such questions are "never entitled to controlling weight or special significance"). To require the Commissioner to accept as controlling a statement that a claimant is or is not disabled—or is or is not capable of work at a particular level of exertion—would require the Commissioner to credit the physician not only with knowledge of the claimant's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. In short, a physician's opinion that a claimant cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance. What is more, as detailed *supra*, Dr. Fisher's examination of Plaintiff revealed that Plaintiff has physical abilities that are consistent with an ability to perform sedentary work, with

---

[11] In an obvious scrivener's error, the ALJ referred to Dr. Fisher as "Dr. Etheridge" (*see* tr. 31).

the exceptions included in Plaintiff's RFC, such as the limitation to standing for no more than fifteen minutes at a time. Thus, the ALJ did not err in assigning only moderate weight to Dr. Fisher's opinions.

Having properly discounted the opinions of Dr. King and Dr. Fisher, the ALJ did not err in assigning determinative weight to the opinions and records of treating sources with the VA. In pertinent part the ALJ noted that, unlike Plaintiff's treatment with other providers of record, his treatment at the VA spanned the entire time frame relevant to this appeal (tr. 31). Again, the ALJ did not err. The VA records, found at transcript pages 259–311, 334–53, 383–477, and 499–568, reflect treatment between mid- 2006 and late-2009. Additionally, the ALJ found that the VA records are internally consistent (tr. 31), which finding is also supported by the record (as can be seen from the yearly summaries of the VA records, *supra*). The VA records are also consistent with the ALJ's ultimate conclusions in this case. In short, the VA records show that Plaintiff's physical examinations were largely unremarkable, as were the results of x-rays, MRIs, and other objective tests. Furthermore, no VA treating source imposed upon Plaintiff any physical restrictions. To the contrary, Plaintiff was advised to engage in physical activity, such as bicycling, and Plaintiff himself reported to VA staff that he engaged in a variety of physical daily activities, including fishing and going to the gym. The ALJ also considered the results of the examinations conducted by PA Labrillazo in June 2008 (*see* tr. 385–90, 464–72), and by PA Wu in January 2007(tr. 563–68), one of which resulted in a total service-connected disability rating of 10% due to Plaintiff's flat feet (*see, e.g.*, tr. 397, 406), and both of which were largely unremarkable and approved by reviewing physicians (*see* tr. 472, 567).

To the extent Plaintiff asserts error based upon the ALJ's reliance on the results of the C&P examinations, because they are "on appeal," he has not established entitlement to relief. While Plaintiff's argument is unclear, he appears to contest the VA's 10% disability rating and/or finding that no condition other than his pes planus (flat feet) is service related. Regardless of the precise nature of Plaintiff's claim(s), however, he is not entitled to relief. The Commissioner's regulations specifically provide that an ALJ <u>must</u> consider all relevant evidence in the record. *See, e.g.*, 20 C.F.R. § 404.1545 (a)(3). Plaintiff's displeasure with—and appeal of—the C&P examination results or other VA determinations has no bearing on the instant appeal. The role of this court is to review

the record <u>as it existed</u> when the Commissioner rendered her final decision on Plaintiff's claim and determine whether the final decision is substantially supported by that record, not to determine whether evidence that was never considered by the Commissioner undermines her decision. Thus, even if Plaintiff's VA appeal was successful—something he has not alleged here—the court's review would still be limited to the record now before this court, as certified by the Commissioner, which is the same record on which the Commissioner based her final decision.

    C.     Subjective Complaints

Although Plaintiff does not specifically contend that the ALJ erred in discounting his complaints of pain, he repeatedly refers to his reports of pain in support of his overall contention that the ALJ erred in finding him "not disabled" (*see* doc. 18). The undersigned will thus review the ALJ's consideration of Plaintiff's subjective complaints.

In <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991), the court articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. The pain standard requires: (1) evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. <u>Holt</u>, 921 F.2d at 1223 (internal citation omitted). If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, as Plaintiff did here, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. <u>Foote</u>, 67 F.3d at 1561–62. Additionally, "'[a]lthough this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.'" *Id.* at 1562 (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)). The credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* (quoting <u>Jamison v. Bowen</u>, 814 F.2d 585, 588–90 (11th Cir. 1987)).

Here, the ALJ articulated the correct pain standard and found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged

by Plaintiff, his statements concerning the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they conflict with the RFC (tr. 22). In support, the ALJ found that: (1) the objective medical evidence fails to substantiate Plaintiff's complaints, including Doppler studies, laboratory tests, lumbar spine x-rays and MRIs, ankle and foot MRIs, bilateral lower extremity MRIs, and physical examinations; (2) Plaintiff was non-compliant with treatment recommendations; (3) Plaintiff's foot pain can reasonably be controlled with conservative measures, such as using orthotics and arch supports or taping his feet, engaging in physical therapy/activity, and undergoing electrical stimulation; (4) the VA physicians imposed no work-related restrictions; and (5) Plaintiff's activities of daily living, such as playing sports, going to the gym, participating in the prison ministry, riding a bicycle and going fishing, are inconsistent with his complaints of disabling limitations (tr. 22–31). Each reason articulated by the ALJ is fully supported by the record[12], and each reason was properly considered by the ALJ. *See, e.g.*, 20 C.F.R. § 404.1529. Thus, to the extent Plaintiff alleges the ALJ erred in discounting the more extreme of his subjection complaints of pain or other symptoms, the undersigned finds no error. *See, e.g.*, Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984) ("[t]he ALJ determines the disabling nature of pain," and if "substantial evidence supports the determination," there is no reversible error) (citations omitted).

D.      RFC Determination

Plaintiff apparently contends that the ALJ erred in determining his RFC, as he states he seeks "true consideration . . . of the record concerning the residual functional capacity" (doc. 18 at 1). In support, Plaintiff references a large section of the ALJ's opinion, which section includes the ALJ's credibility findings and summary of the medical evidence of record (*see id.* (referencing tr. 21–30)). Thus, the precise basis of Plaintiff's RFC-based claim is unclear. To the extent the claim is based on the ALJ's credibility findings, Plaintiff is not entitled to relief for the reasons set forth in the preceding section of this Report. Additionally, an independent review of the ALJ's RFC determination reveals no error.

---

[12] It should be noted that he ALJ referenced the portions of the record that support each of his credibility findings (*see* tr. 22–31), most or all of which portions are discussed in Section IV.B. of this Report, *supra*.

As this court is well aware, residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). As stated in 20 C.F.R. § 404.1545(a), it is the most a claimant can still do despite his limitations. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the RFC determination is a medical question, it is not based only on "medical" evidence, that is, evidence from medical reports or sources; rather, an ALJ has the duty, at step four, to assess RFC on the basis of all the relevant, credible evidence of record. *See* Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir. 2000) (per curiam) (RFC is a determination based upon all the record evidence, but the record must include some medical evidence that supports the RFC finding). *See also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p.

Here, the ALJ reasonably limited Plaintiff to a range of sedentary work involving lifting or carrying up to fifteen pounds, sitting up to eight hours a day, and standing or walking up to two hours a day but in no longer than fifteen-minute intervals (tr. 21). This RFC is supported by the record, including the results of Plaintiff's physical examinations, observations by numerous treating sources, the results of objective diagnostic tests, Plaintiff's daily activities, and the opinions of examining and non-examining sources (except those of Drs. King and Fisher, which the ALJ properly discounted). *See, e.g.*, McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987) (an ALJ need not include in the RFC limitations, restrictions, or opinions he has properly rejected or that are otherwise unsupported by the record). Based on the totality of the information contained in this Report, including the discussion of Plaintiff's medical history and his first three claims for relief, the undersigned has no hesitation concluding that the ALJ reasonably assessed and determined Plaintiff's RFC. Although Plaintiff may disagree with the Commissioner's weighing of the evidence and ultimate conclusions, this does not mean they are erroneous. As long as the Commissioner's finding is supported by substantial evidence, as it is here, it is entitled to deference and should be affirmed.

Finally, after carefully considering the evidence, the ALJ presented hypothetical questions to the VE that included the RFC she ultimately determined, and in response the VE opined that Plaintiff could perform the sedentary jobs of general office clerk, telemarketer or telephone solicitor, and dispatcher (tr. 62–63). Relying in part on this testimony, the ALJ did not err in finding Plaintiff capable of working in sedentary jobs that accommodate his RFC and, correspondingly, in finding him "not disabled."

VI.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED**:

Carolyn W. Colvin is substituted for Michael J. Astrure as Defendant in this action.

And it is respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this <u>25</u><sup>th</sup> day of July 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**